UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

The Estate of SETH MICHAEL ZAKORA, and BRANDY ZAKORA, in her capacity as the Personal Representative of the Estate of Seth Michael Zakora,

        *Plaintiffs*,

v.

TROY CHRISMAN; MATTHEW HUNTLEY; CHADWICK MOBLEY; STEVE JOHNSON; BONITA HOFFNER; STEVE RIVARD; HEIDI WASHINGTON; BRANDON OAKS; HEATHER LASS; and JAMES WOLODKIN,

        *Defendants*.

Case No.:

Hon.

_____/

Solomon M. Radner (P73653)
Madeline M. Sinkovich (P82846)
Attorneys for Plaintiffs
26700 Lahser Road, Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com
_____/

**COMPLAINT AND JURY DEMAND**

    NOW COMES Plaintiffs, by and through their attorneys, EXCOLO LAW, PLLC, complaining of Defendants, and respectfully alleges as follows:

**JURISDICTION AND VENUE**

1

1. This is a civil rights action in which the Plaintiffs seeks relief for the violation of rights secured by 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments, and Michigan state law.

2. Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

3. The events that give rise to this lawsuit took place in the Lakeland Correctional Facility of the Michigan Department of Corrections.

4. Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of Coldwater, County of Branch, State of Michigan.

## PARTIES

5. Plaintiff the Estate of Seth Michael Zakora is the estate of Seth Michael Zakora ("Mr. Zakora"), a deceased person who was formerly in the custody of the Michigan Department of Corrections ("MDOC").

6. Plaintiff Brandy Zakora ("Ms. Zakora") is Mr. Zakora's mother, and is the personal representative of the Estate of Seth Michael Zakora. Ms. Zakora is a resident of the City of Charlotte, Eaton County, Michigan.

7. Defendant Troy Chrisman ("Chrisman") was, at all times relevant to this complaint, employed by MDOC as an Inspector at the Lakeland Correctional Facility. Defendant Chrisman is being sued in his individual and supervisory capacity.

8. Defendant Matthew Huntley ("Huntley") was, at all times relevant to this complaint, employed by MDOC as an Inspector at the Lakeland Correctional Facility. Defendant Huntley is being sued in his individual and supervisory capacity.

9. Defendant Chadwick Mobley ("Mobely") was, at all times relevant to this complaint, employed by MDOC as an Officer at the Lakeland Correctional Facility. Defendant Mobely is being sued in his individual capacity.

10. Defendant Steve Johnson ("Johnson") was, at all times relevant to this complaint, employed by MDOC as an Officer at the Lakeland Correctional Facility. Defendant Johnson is being sued in his individual capacity.

11. Defendant Bonita Hoffner ("Hoffner") was, at all times relevant to this complaint, employed by MDOC as the Warden at the Lakeland Correctional Facility. Defendant Hoffner is being sued in her individual and supervisory capacity.

12. Defendant Steve Rivard ("Rivard") was, at all times relevant to this complaint, employed by MDOC as the Assistant Deputy Director. Defendant Rivard is being sued in his individual and supervisory capacity.

13. Defendant Heidi Washington ("Washington") was, at all times relevant to this complaint, employed by MDOC as the Director. Defendant Washington is being sued in her individual and supervisory capacity.

14. Defendant Brandon Oaks ("Oaks") was, at all times relevant to this complaint, employed by the Michigan State Police, "MSP", as a Trooper. Defendant Oaks is being sued in his individual capacity.

15. Defendant Heather Lass ("Lass") was, at all times relevant to this complaint, employed by MSP as a Detective/Sergeant. Defendant Lass is being sued in her individual and supervisory capacity.

16. Defendant James Wolodkin ("Wolodkin") was, at all times relevant to this complaint, employed by MSP as a Trooper. Defendant Wolodkin is being sued in his individual capacity.

17. When discussed together, Defendants Oaks, Lass and Wolodkin will be referred to as the "Defendant Troopers."

## STATEMENT OF FACTS

18. At all times relevant, Mr. Zakora was in the custody of the MDOC and resided at Lakeland Correctional Facility in Coldwater, Michigan.

19. On January 22, 2017, Mr. Zakora passed away from an overdose of drugs.

20. It was determined Mr. Zakora died from a fentanyl overdose, but it was not determined whether Mr. Zakora intentionally took these drugs.

21. Upon information and belief, the night / early morning when Mr. Zakora died, a prisoner had told Defendant Mobely and/or Defendant Johnson to

check on Mr. Zakora because he was not doing well or because there appeared to be something wrong with him. Upon information and belief, Defendant Mobely and/or Defendant Johnson never checked on Mr. Zakora and foreclosed any possible lifesaving medical treatment.

22. When he was found in his bunk the next morning, he was completely covered, head-to-toe, by his bed sheets and was in advanced rigor mortis.

23. Mr. Zakora had signs of postmortem lividity on the right side of his body on which he was found.

24. Upon information and belief, at the time of Mr. Zakora's death, drugs were in abundance and being smuggled into Lakeland Correctional Facility. Upon information and belief, a female corrections officer and a prisoner with whom she was romantically involved orchestrated the drug smuggling and selling.

25. On January 20, 2017 and January 21, 2017, two other inmates had overdosed on drugs before Mr. Zakora's death on January 22, 2017. Upon information and belief, these three inmates all resided in the same C-Unit at Lakeland Correctional Facility. A few days prior, another individual incarcerated at Lakeland Correctional passed away.

26. Upon information and belief, another prisoner had informed Lakeland Correctional Inspectors, specifically Defendant Chrisman and the Inspector's Office, of the drug smuggling ring on more than one occasion prior to Mr. Zakora's

death and provided information to the officers with details of how the drugs were coming in and who was providing them.

27. Upon information and belief, this prisoner explained his involvement in other facilities and gave step by step details of how and when drugs were entering the facility and specifically gave Defendant Chrisman information about the individuals supplying large amounts of drugs to Mr. Zakora.

28. Upon information and belief, Defendants Chrisman told Defendant Huntley, another inspector, but neither did anything to investigate or stop the drugs flowing into the facility, even when two other inmates had overdosed in the two days prior. Upon information and belief, Defendants also told their supervisors, Defendants Hoffner and Rivard, and they either ignored and/or instructed them to ignore the information and/or not investigate the accusations.

29. Prior to his death, Mr. Zakora was moved to C-Unit. He also spent some time in segregation. While in segregation Mr. Zakora feared for his life and told his grandmother what was happening in the prison, how drugs were coming in from the outside, and how he was afraid he would not make it out alive.

30. Upon information and belief, when Mr. Zakora was escorted from segregation to his unit, the two corrections officers taking him said that he had gotten himself into this mess, i.e. into the drug problem at Lakeland, and now it was his problem to deal with.

31. Upon information and belief, prior to his death, Mr. Zakora was scared for his life and had requested protection from MDOC but his request was denied.

32. Upon information and belief, after the death of Mr. Zakora, the prisoner who relayed the information to the inspectors was charged and convicted of smuggling the drugs into Lakeland Correctional Facility to avoid an internal investigation of the accusations against the corrections officer involved.

33. Upon information and belief, there was no investigation into the female corrections officer who was accused of working with an inmate to bring and sell drugs in Lakeland Correctional Faculty.

34. Upon information and belief, Defendants Hoffner, Washington, Rivard, Chrisman, and Huntley knew of the previous overdoses but did not order a full investigation until after Mr. Zakora died. After his death, MSP brought a drug dog into the facility. According to the reports, the dog made positive indications for contraband in C-Unit.

35. At 10:30 AM on January 22, 2017, Defendant Huntley called Judy Zakora, Mr. Zakora's grandmother, and stated that her grandson was involved in an "incident" that was under investigation with the MSP and that he was deceased.

36. Upon information and belief, out of the four MSP Troopers who investigated Mr. Zakora's death, only three of the four officers are still employed by the State of Michigan. Upon information and belief, the three officers who no longer

7

work for the Michigan State Police, Defendant Brandon Oaks, Defendant Heather Lass, and Defendant James Wolodkin, were involved with the drug smuggling ring and/or a cover up of Mr. Zakora's death. Upon information and belief, Defendant Troopers knew that a "cop/officer" was the person bringing suboxone and heroin into the facility but did not investigate the allegation in determining the source of the drugs that caused Mr. Zakora's death.

**Drug Smuggling in the MDOC**

37. According to public information, in the months prior to Mr. Zakora's death, the MDOC, specifically Heidi Washington, had notice that corrections officers were smuggling drugs into prisons, maintaining a dangerous drug ring, and retaliating against those who came forward, officers and inmates alike.

38. One corrections officer reported another officer for smuggling drugs into an MDOC facility, the Gus Harrison Correctional Facility. His lawsuit states that MDOC directed the facility inspectors to investigate the claims. After no investigation occurred, the officer reported the smuggling to the MSP. Mere days after reporting to the MSP, the drug smuggling evidence <u>disappeared</u> from the evidence locker at the facility.

39. Upon information and belief, only MSP has access to the evidence locker.

40. The lawsuit continues that the officer proceeded to report the disappearance of evidence and lack of investigation to MDOC Internal Affairs. On this same day, the prisoner who confessed to the officer about the drug smuggling, was <u>beaten to death</u> while in MDOC custody at a different facility. Two weeks later, on October 14, 2016, another prisoner who was named by the confessing prisoner as involved in the ring, was <u>killed</u> in MDOC custody.

41. The officer was fired from his position and rehired after he brought the litigation detailed in part above. Upon information and belief, MDOC paid $175,000 to this officer in a settlement.

42. At around the same time period, another corrections officer at a different facility in the MDOC came forward with allegations of an officer smuggling drugs into the G. Robert Cotton Correctional Facility. On October 23, 2016, after nothing was done about his allegations and he began to experience retaliation from staff, he emailed Defendant Heidi Washington, director of MDOC, and other top officials voicing his concerns. He detailed the risks to him, his family, and the prisoners who trusted him with this information.

43. According to the Detroit Free Press, the officer smuggling in the drugs was not placed on suspension for over 15 months after the officer alerted Defendant Washington in October 2016. During this same time, the officer who came forward

was fired by MDOC. He succeeded in a civil service hearing and was rehired to G. Robert Cotton Correctional Facility with full back-pay.

44. Upon information and belief, drug smuggling is a significant problem inside the Michigan state prison system and in less than two years anti overdose drugs have been used approximately 150 times.

45. Upon information and belief, Defendants Washington, Hoffner, Chrisman, Huntley, and Rivard knew of and permitted the drug smuggling operation and inherent dangers yet did nothing in response and permitted the MDOC facilities to operate in a such a manner as to tolerate its officers, state employees, to work with other prisoners to smuggle drugs and contraband into the facilities, creating an even more dangerous environment that led to the overdoses of the three individuals in C-Unit, the death of Mr. Seth Michael Zakora, and the deaths of the inmates who provided information about the drug smuggling operations of MDOC officers. Accordingly, Defendants either permitted illegal drugs to be smuggled into the facilities, or failed to train and supervise MDOC employees when alerted of a widespread issue.

46. Defendants' actions were done intentionally, maliciously, knowingly, wantonly, recklessly, sadistically, with gross negligence, through deliberate indifference, and without any objective reasonableness.

47. Plaintiff suffered harm as a direct result of Defendants actions and inactions.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983
### Eighth Amendment – Failure to Protect

**(Defendants Chrisman, Huntley, Hoffner, Rivard and Washington)**

48. Plaintiffs incorporate herein all prior allegations.

49. At all times relevant, Mr. Zakora was incarcerated with the MDOC and because he was in their custody, the facility assumed a duty to protect Mr. Zakora from known serious risks to his health and safety.

50. Defendants knew Plaintiff was vulnerable to overdose and/or injury do to his involvement with drugs at Lakeland Facility and/or the pervasive drug smuggling problem at Lakeland Facility and/or the MDOC.

51. Defendants knew that two inmates in the same unit had overdosed from the drugs and knew Mr. Zakora had involvement with those drugs.

52. Defendants ignored their knowledge and did not do anything to curb the introduction, spread, and usage of dangerous drugs in prison, despite their direct knowledge from prisoners snitching to them and from two previous overdoses.

53. In fact, Defendants waited until after Mr. Zakora died to bring drug dogs into Lakeland, despite their explicit knowledge of drugs prior to Mr. Zakora's death and the overdose of the other two prisoners in C-Unit.

54. Defendants' refusal to act constitutes deliberate indifference to Mr. Zakora's vulnerable state.

55. Defendants' actions and inactions constitutional a violation of Plaintiffs rights under 42 U.S.C. § 1983 and under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, which resulted in his death.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983
### Fourteenth Amendment - State Created Danger

**(Defendants Washington, Rivard, Hoffner, Chrisman, Huntley, Oaks, Lass, and Wolodkin)**

56. Plaintiffs incorporate herein all prior allegations.

57. The Due Process Clause to the Fourteenth Amendment prohibits state officials from engaging in conduct that renders an individual more vulnerable to harm.

58. MDOC and/or MSP employees orchestrated and participated in a dangerous drug ring in MDOC prisons and at Lakeland Correctional Facility. Defendants facilitated this drug ring by knowingly permitting it to happen within the facilities and/or participating in the drug ring.

59. Defendant Washington and Rivard, through their high-level positions and emails from other corrections officers describing the drug smuggling from officers and the retaliation against staff and prisoners, knew there was a drug

smuggling problem in the MDOC where state employees were bringing in drugs to MDOC facilities and selling them to prisoners, and knew drugs were a severe problem in MDOC facilities and anti over dose drugs had been used often.

60. Defendants permitted MDOC corrections officers to bring drugs into MDOC facilities and thereby facilitated illegal drug use and sales in MDOC prisons.

61. Defendants knew prisoners known to be involved in snitching on the officers for smuggling drugs into MDOC prisons were killed in MDOC facilities.

62. Defendants Chrisman and Huntley knew there was a drug smuggling problem at Lakeland Correctional and had been informed of those involved. Defendants Chrisman, Huntley, and Hoffner knew there were two overdoses in Mr. Zakora's unit within 48 hours before his death.

63. Defendants permitted illegal drugs to be sold and used in Lakeland Facility and thereby facilitated dangerous drug use and sales.

64. Defendants actions of permitting illegal drugs to be sold and used made Mr. Zakora more vulnerable to harm and constituted deliberate indifference to a serious risk of harm, as officers knew he was scared due to his involvement with drugs and they would not provide him any protection. Further, Defendants knew that two individuals in his unit had overdosed from dangerous drugs. Mr. Zakora was exposed to harm when he overdosed on the drugs Defendants permitted to be smuggled into the facility.

65. Defendants' actions and inactions constitutional a violation of Plaintiffs rights under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution, which resulted in his death.

### COUNT III
### VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983
### Failure to Train & Supervise

**(Defendants Washington, Rivard, Hoffner)**

66. Plaintiffs incorporate herein all prior allegations.

67. Supervisory state officials are prohibited from enacting or maintaining unconstitutional policies, practices or customs with deliberate indifference to the consequences.

68. A supervisor is liable if they at least implicitly authorized, approved of or knowingly acquiesced in the unconstitutional conduct of a subordinate.

69. Defendants Washington and Rivard maintained a policy that permitted corrections officers to smuggle drugs into prisoners and sell the dangerous drugs to incarcerated individuals.

70. Defendants knew that drugs in prisons had lead to overdoses, retaliation and/or deaths of incarcerated individuals.

71. In the alternative, Defendants did not have a policy that permitted officers to sell drugs in prison, but had a policy that failed to properly train and supervise their subordinates despite their knowledge of unlawful conduct.

72. Defendants Hoffner, Chrisman, and Huntley knew unlawful drugs were being smuggled into the facility and had a policy that permitted this conduct.

73. Defendants knew drugs were an issue at Lakeland Correctional and knew who was bringing them in.

74. In the alternative, Defendants did not have a policy that permitted drugs to be smuggled and sold in Lakeland Correctional, but had a policy that failed to train and supervise the female corrections officer bringing the drugs into the facility and failed to train and supervise Defendants Chrisman and Huntley who knew about the drugs but did nothing to address the problem.

75. Defendants' actions and inactions constitutional a violation of Plaintiffs rights under 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution, which resulted in his death.

### COUNT IV
### VIOLATION OF CIVIL RIGHTS UNDER 42 USC § 1983
### Eighth Amendment - Deliberate Indifference

**(Defendants Mobely and Johnson)**

76. Plaintiffs incorporate herein all prior allegations.

77. The Eighth Amendment to the United States Constitution prohibits state official from exhibiting deliberate indifference to a serious medical need of prisoners.

78. Defendant Mobely knew during his shift that Mr. Zakora was not doing well, there appeared to be something wrong with him, and he should be checked on.

79. Defendant Mobely did not check on Mr. Zakora.

80. Defendant Johnson, who worked his shift after Defendant Mobely, also knew something was wrong with Mr. Zakora but did not check on him until several hours in and he was already deceased.

81. Had Defendants checked on Mr. Zakora earlier when they first learned of his condition, Mr. Zakora could have received lifesaving medical treatment.

82. Defendants actions and inactions exhibited deliberate indifference to Mr. Zakora's serious medical condition, in violation of his right under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment, which resulted in his death.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorney's fees and costs of this action;

d. Award the Estate of Seth Michael Zakora, pursuant to Mich. Comp. Laws § 600.2922, fair and equitable damages, including, but not limited to, reasonable medical, hospital, funeral, and burial expenses for which the estate is liable;

reasonable compensation for Mr. Zakora's pain and suffering, while conscious, during the intervening period between the time of his injuries and his death; and damages for the loss of Mr. Zakora's financial support, society, and companionship; as well as any other damages cognizable under law; and

e. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

EXCOLO LAW, PLLC

Dated: December 3, 2019       By: */s/Solomon M. Radner*
Solomon M. Radner (P73653)
Madeline M. Sinkovich (P82846)
Attorneys for Plaintiffs
26700 Lahser Road, Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com
msinkovich@excololaw.com