UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

The Estate of SETH MICHAEL ZAKORA,
and BRANDY ZAKORA, in her capacity
as the Personal Representative of the Estate
of Seth Michael Zakora,

        Plaintiffs,                              Hon. Janet T. Neff

v.                                        Case No. 1:19-cv-1016

TROY CHRISMAN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiffs the Estate of Seth Michael Zakora and Brandy Zokora, the Personal Representative of the Estate of Seth Michael Zakora, have sued several employees and officials with the Michigan Department of Corrections (MDOC) and with the Michigan State Police (MSP) pursuant to 42 U.S.C. § 1983. Plaintiffs' claims arise out of the drug-overdose death of Seth Zakora while in the custody of the MDOC at Lakeland Correctional Facility (LCF). Plaintiffs sue the following MDOC Defendants: LCF Inspectors Troy Chrisman and Matthew Huntley; LCF Corrections Officers Chadwick Mobley, Steve Johnson, and Jane Doe; LCF Warden (at the time of the incident) Bonita Hoffner and her Administrative Assistant Russell Rurka; MDOC Assistant Deputy Director Steve Rivard; and MDOC Director Heidi Washington. Plaintiffs sue the following MSP Defendants: Troopers Brandon Oaks and James Wolodkin; Detective/Sergeant Heather Lass; and Lieutenant James Coleman.

This matter is now before me on the MSP Defendants' Motion to Dismiss or, alternatively, Motion for Summary Judgment (ECF No. 33) and the MDOC Defendants' (Corrected) Motion to

Dismiss and for Summary Judgment (ECF Nos. 36 and 39). In addition, Plaintiffs have filed a Motion for Leave to File a Second Amended Complaint. (ECF No. 47.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motions be **GRANTED**. In addition, Plaintiff's motion to amend is **DENIED**.

## I. Background

On January 22, 2017, Seth Michael Zakora died from a drug overdose in the C-Unit of LCF. (ECF No. 3 at PageID.33.) Defendant Johnson found Zakora lying unresponsive in his bunk in the C-5 housing unit at 7:58 a.m. (ECF No. 37-2 at PageID.220.) Responding officers observed that Zakora was obviously deceased due to rigor mortis. (*Id.*) The cause of death was determined to be fentanyl toxicity by accident. (EFC No. 37-3.) In the two days prior to Zakora's death, two other prisoners housed in C-Unit overdosed on drugs. (ECF No. 3 at PageID.34.) Plaintiffs allege that, at the time of Zakora's death, illegal drugs were in abundance at LCF and were being smuggled in by a female corrections officer and a prisoner who were romantically involved with each other. (*Id.*) Plaintiffs also allege, however, that Defendants Rurka and Lass told Zakora's mother, Brandy Zakora, that prior to the death, drugs were being smuggled into the prison inside basketballs that were thrown over the fence, but they could not catch the perpetrator. (*Id.* at PageID.36.) Following Zakora's death, the MSP made a full investigation and brought a drug dog into the facility that alerted to contraband in the C-Unit. (*Id.*)

Plaintiffs allege that a prisoner had informed Defendant Chrisman and LCF's Inspector office about the drug smuggling ring on more than one occasion prior to Zakora's death, providing information about how drugs were coming in and who was supplying them. Plaintiffs further allege that Chrisman relayed this information to another Inspector, Defendant Huntley, but neither took any action to stop the flow of drugs into the facility. Defendants Chrisman and Huntley allegedly

told their supervisors, Defendants Hoffner and Rivard, about the drug smuggling, but they either ignored the information or instructed Chrisman and Huntley to ignore it or to not to investigate the accusations. Plaintiffs also allege that Rurka knew about the drug smuggling and knew that drugs were being smuggled into the facility inside basketballs. (*Id.* at PageID.34–35.) The prisoner who related the information to the inspectors was charged and convicted of smuggling drugs into LCF, allegedly to avoid an internal investigation into the female corrections officer who was involved in the smuggling. (*Id.* at 36.)

Plaintiffs also claim that MSP Defendants Oaks, Lass, Wolodkin, and Coleman "were involved with the drug smuggling ring and/or a cover up of Mr. Zakora's death." (*Id.* at PageID.37.) Plaintiffs further allege that "Defendant Troopers knew and or participated in the drug smuggling and knew of the risks and harm associated with dangerous illegal drugs." (*Id.* at PageID.40.) Plaintiffs state that the MSP Defendants "knew that a 'cop/officer' was the person bringing suboxone and heroin into the facility but did not investigate the allegation in determining the source of the drugs that caused Mr. Zakora's death." (*Id.* at PageID.37.) Plaintiffs allege that, in spite of this knowledge of drugs being smuggled into LCF, Defendants "did not do anything to curb the introduction, spread, and usage of dangerous drugs in prison, despite their direct knowledge from prisoners snitching to them and from two previous overdoses." (*Id.* at PageID.41.) Thus, Plaintiffs contend, all Defendants "facilitated this drug ring by knowingly permitting it to happen within the facilities and/or participating in the drug ring." (*Id.* at PageID.42.)

## II. Motion Standards

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its factual assertions in a light most favorable to the plaintiff to determine whether it states a claim that is plausible on its face. *See In*

*re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Rule 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has instructed, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79. In reviewing the sufficiency of a complaint, a court "need not accept as true legal conclusions or unwarranted factual inferences," or "legal conclusions masquerading as factual allegations." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009).

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Where, as here, a defendant moves for dismissal and for summary judgment as an alternative ground and the plaintiff responds by submitting materials outside the record, the court need not give notice that it might treat the motion as one for summary judgment. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004).

### III. Discussion

Plaintiffs allege four claims. In Count I, they allege that all Defendants except Mobley and Johnson failed to protect Zakora from illegal drugs that entered LCF in violation of the Eighth Amendment. In Count II, Plaintiffs allege all Defendants violated Zakora's Fourteenth Amendment rights under the state-created-danger doctrine by failing to investigate allegations of drug smuggling. In Count III, Plaintiffs allege that MDOC Defendants Washington, Rivard, and Hoffner failed to train and/or supervise their subordinates with regard to not permitting officers to sell drugs in prison, or had a policy permitting corrections officers to smuggle drugs into prison and sell them to prisoners, in violation of the Fourteenth Amendment. Finally, in Count IV, Plaintiffs allege an Eighth Amendment deliberate indifference claim against MDOC Defendants Mobley and Johnson for failing to check on Zakora after a prisoner told them that something was wrong with Zakora.

Because Plaintiffs state in their response that they do not contest Defendants' motions to dismiss the Fourteenth Amendment claim in Count II, (ECF No. 42 at PageID.372 n.4), and they offer no argument in response to Defendants' arguments for dismissal of that claim, the Court may conclude that Plaintiffs have abandoned Count II. *See Karmol v. Ocwen Loan Servicing, LLC*, No. 1:16-CV1178, 2016 WL 7188742, at *2 (W.D. Mich. Dec. 11, 2016) (treating the plaintiff's failure

to respond to a complaint as a waiver or abandonment of claims). Therefore, I recommend that this claim be dismissed.

### A.   Qualified Immunity

Both sets of Defendants raise the issue of qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also said that, when the "pleadings in th[e] case are not ambiguous," and "it is clear that no violation of a clearly established constitutional

right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005).

### B.    MSP Defendants' Motion

Plaintiffs' sole claim against the MSP Defendants is that they violated his Eighth Amendment rights by failing to protect him from a substantial risk of harm.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Prison officials' conduct that involves the "unnecessary and wanton infliction of pain" is thus unlawful. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). An Eighth Amendment claim includes both objective and subjective components. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The objective component requires the harm to be "sufficiently serious." *Id.* at 506 (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 1977 (1994)). Under this component, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element focuses on whether a prison official knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a significant risk but did not. *Id.*

Inmates also have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Id.* at 833. Prison staff are thus obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). A failure-to-protect claim requires the same showing: the prisoner-plaintiff faced a sufficiently serious risk to his health or safety and the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Hudson*, 468 U.S. at 526–27; *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. In the context of physical harm, for example, a prisoner need not prove that he has been the victim of an actual attack, but he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Because the MSP Defendants move for dismissal on alternate procedural grounds, I will address both.

### 1.    Rule 12(b)(6)

The MSP Defendants contend that the first amended complaint is subject to dismissal because its allegations as to them are wholly conclusory, and it fails to allege facts showing their personal involvement in the alleged constitutional violation.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. When a plaintiff fails to allege facts showing how a particular defendant was involved in the alleged constitutional violation, the complaint is properly dismissed as to that defendant. *See Gilmore v. Corrections*

8

*Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing the complaint where the plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00–3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant).

As to the MSP Defendants, Plaintiffs allege the following:

- "[T]he three officers who no longer work for the Michigan State Police, Defendant Brandon Oaks, Defendant Heather Lass, Defendant James Wolodkin, and Defendant James Coleman, were involved with the drug smuggling ring and/or a cover up of Mr. Zakora's death.[1]  (ECF No. 3 at PageID.37.)
- The MSP Defendants "knew that a cop/officer" was the person bringing suboxone and heroin into the facility but did not investigate the allegation in determining the source of the drugs that caused Mr. Zakora's death." (*Id.*)
- "Defendant Lass told Ms. Brandy Zakora that prior to her sons' [sic] death there had been basketballs of drugs thrown over the fence frequently but they couldn't catch the perpetrator." (*Id.* at PageID.36.)
- "Defendant Troopers knew and or participated in the drug smuggling and knew of the risks and harm associated with dangerous illegal drugs." (*Id.* at PageID.40.)

These bare-bones allegations do not state a constitutional violation against the MSP Defendants. With the exception of the allegation that Defendant Lass told Zakora's mother about the basketballs, which occurred after the death, there is no factual allegation that specifically mentions what any MSP Defendant did that amounts to an Eighth Amendment violation, and the allegation regarding Defendant Lass fails to support an Eighth Amendment claim. Plaintiffs' allegations are nothing more than legal conclusions couched as facts.

---

[1] Plaintiffs allege "three officers who no longer work for the Michigan State Police," but list all four MSP Defendants.

Plaintiffs contend that they allege sufficient facts to support a claim because "Defendants' own documents demonstrate that they had notice that a cop/officer was alleged to be involved in the drug-smuggling operation," and Defendants failed to investigate this tip and instead focused their investigation only on the prisoner-informant. (ECF No. 42 at PageID.386.) The document Plaintiffs reference, ECF No. 37-4, was submitted by the MDOC Defendants in support of their motion. Regardless, it shows only that a prisoner told Defendant Wolodkin during the investigation *after* Zakora's death that a "cop/officer" was involved in bringing drugs into the facility. (ECF. No. 37-4 at PageID.317.) The MSP Defendants could not have violated Zakora's Eighth Amendment rights based on this allegation. Plaintiffs also contend that Defendant Lass's statement to Brandy Zakora about the basketballs being thrown over the fence creates a reasonable inference that an MSP Trooper had knowledge of the drug smuggling or was involved in the drug smuggling. (ECF No. 42 at PageID.386.) The allegation creates no basis to infer that the MSP Defendants violated Zakora's Eighth Amendment rights. At most, it shows that law enforcement officers were aware of a mode of smuggling but were unable to catch the perpetrator. This is not a constitutional violation.

Therefore, the MSP Defendants are entitled to dismissal pursuant to Rule 12(b)(6).

### 2. Rule 56

In support of the summary judgment portion of their motion, Defendants submit declarations attesting to their involvement in the events in this case. Defendant Coleman states that his only involvement was conducting a routine property destruction of evidence associated with the Zakora case on March 18, 2018. (ECF No. 34-1 at PageID.167.) Defendant Wolodkin states that his only involvement with the case was investigating and processing the crime scene following Zakora's death. (ECF No. 34-2 at PageID.171.) Defendant Lass states that her only involvement with the case was conducting interviews of various prisoners for the investigation at LCF. (ECF

No. 34-3 at PageID.175.) Finally, Defendant Oaks states that his only involvement was during the investigation, in which he interviewed prisoners and staff at LCF, searched Zakora's personal property, prepared and reviewed reports, and submitted MSP's findings to the Branch County Prosecutor's office. (ECF No. 34-4 at PageID.179.) These declarations demonstrate that the MSP Defendants did not violate Zakora's clearly established constitutional rights.

Plaintiffs contend that summary judgment is improper because they have not had an opportunity to conduct discovery. Indeed, the Sixth Circuit has observed that "the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 281 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 257). Therefore, "[a] grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery." *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th Cir. 1994). Rule 56(d) provides the non-moving party a mechanism to obtain sufficient discovery when faced with a motion for summary judgment. However, a party's submission of an affidavit or declaration pursuant to that rule is not an automatic guarantee of additional discovery. "'A party invoking [the] protections [of Rule 56(d)] must do so in good faith by affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact.'" *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014) (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975)). The party seeking discovery must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). In other words, the party offering the affidavit must, with "details" and "specificity," explain why additional discovery will enable the party to rebut the

movant's showing of the absence of a genuine issue of material fact. *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989).

Here, although Plaintiffs' counsel has submitted a declaration, it states only that "[t]he information to be discovered includes documentary and testimonial evidence to support the allegations in the Complaint that, as demonstrated in Plaintiff's response brief, are also documented in other public sources and official documentation." (ECF No. 42-3 at PageID.440) Counsel's declaration lacks the detail and specificity required to make a proper showing under Rule 56(d). For example, prior to filing this case, counsel must have had *some basis*—beyond the speculation asserted in the amended complaint and Plaintiffs' response—to conclude that the MSP Defendants were connected to the smuggling operation in some manner that could render them liable for violating Zakora's Eighth Amendment rights, and he could have cited that information to demonstrate a good-faith basis for discovery, but he did not do so. Accordingly, Plaintiffs have not even minimally demonstrated that discovery would enable them to defeat summary judgment.

### C.    MDOC Defendants' Motion

The MDOC Defendants also move for dismissal and, alternatively, for summary judgment. Because only Defendants Johnson and Mobley have submitted affidavits, I construe the motion for summary judgment as limited to those Defendants. As with the MSP Defendants' motion, I will address both bases for dismissal.

#### 1.    Rule 12(b)(6) Motion

##### a.    Count I

Plaintiffs assert their Eighth Amendment failure-to-protect claim against Defendants Chrisman, Huntley, Hoffner, Rurka, Rivard, and Washington. Defendants contend that Plaintiffs fail sufficiently to allege facts establishing the objective and subjective components of their claim. Defendants further contend that, even if Plaintiffs can establish both components of their claim,

they are entitled to dismissal because Zakora's own voluntary decision to take illegal drugs, rather than their deliberate indifference, was the proximate cause of his death,

Defendants contend that Plaintiffs cannot establish the objective component because inmates are not constitutionally entitled to greater protection from the effects of illicit drugs than unincarcerated citizens, and the Eighth Amendment does not guarantee the right to be incarcerated in a drug-free facility. The cases Defendants offer for these propositions are generally distinguishable from this case and are not binding on this Court. For example, *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985), was a class action regarding various conditions of confinement at a state facility, including unreasonable exposure to the threat of violence and drugs. *Id.* at 977. Following a bench trial, the district court concluded that the rate of assaults was not unreasonable compared to that of other facilities and that, while there was a problem regarding drug use among a small group of inmates, the "[r]isk of exposure to illegal drugs . . . seem[ed] no greater than the risk of exposure on the outside." *Id.* at 981. *Shrader* was not a failure-to-protect case and, more importantly, implicitly acknowledged the possibility that drug use could be so pervasive in a prison facility as to violate the Eighth Amendment. *Nunez v. Salamack*, No. 88 CIV. 4587, 1989 WL 74940 (S.D.N.Y. June 26, 1989), also involved a conditions-of-confinement claim in which the plaintiff alleged that the failure to provide him with a drug-free environment violated the Eighth Amendment. *Id.* at 81. The court found that "[t]he alleged failure to provide Nunez with a drug-free environment does not state a claim against Salamack. Merely being exposed to illegal drugs in prison did not constitute the unnecessary and wanton infliction of pain, even if the effect of such exposure was to hinder Nunez' rehabilitation." *Id.*; *see also Smith v. Connections CSP, Inc.*, No. 17-1733, 2018 WL 1433840, at *4 (D. Del. Mar. 20, 2018) (rejecting the plaintiff's conditions of confinement claim because exposure "to illegal drugs in a prison does not violate his constitutional

rights"). Here, though, Plaintiffs are not simply complaining about Zakora's exposure to illegal drugs. Finally, *Alexander v. Padvaiskas*, No. 14-13675, 2015 WL 10433618 (D. Mass. Dec. 2, 2015), like this case, involved the death of a prisoner who overdosed on illegal drugs smuggled into prison. Citing *Shrader* and *Nunez*, the court found that the plaintiff failed to establish the objective component because he did not allege "that the risk of exposure to drugs was greater inside the Thorndike Street lockup than outside of state custody," and that failing to monitor the plaintiff in prison "would be to conclude that inmates are constitutionally entitled to greater protection from the effects of illicit drugs than unincarcerated citizens." *Id.* at *3. The court further said that "the right to be protected from voluntary consumption of illicit drugs is well beyond the 'minimal civilized measures of life's necessities.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347). It appears, however, that the court did not analyze the claim as one of failure to protect.

Plaintiffs' cases are also not directly applicable. In *Cooks v. Guterrez*, No. C-10, 2011 WL 832469 (S.D. Tex. Mar. 3, 2011), the plaintiff's failure-to-protect claim alleged that the defendants failed to protect the plaintiff from threats to his safety after he complained of contraband smuggling, which he alleged the defendants condoned. *Id.* at *3. The plaintiff's claim in *Turner v. Cook County Sheriff's Office*, No. 19 CV 5441, 2020 WL 1166186 (N.D. Ill. Mar. 11, 2020), was deliberate indifference to the deceased prisoner's serious medical needs after she overdosed on smuggled drugs. *Id.* at *1–2. Finally, in *Mark v. Hickman*, 2019 U.S. Dis. LEXIS 189487 (S.D. Tex. Oct. 31, 2019, the plaintiff alleged a failure to protect claim that concerned an assault by a prisoner who was smuggling drugs with the assistance and knowledge of a corrections officer. The alleged failure in the instant case is protection from the drugs themselves that have entered the prison.

14

At least one court has recognized that a prisoner might be able to maintain a failure-to-protect claim based on exposure to illegal drugs, but concluded that the plaintiff failed to allege sufficient facts supporting both components of the claim. *James v. Bartow Cnty.*, No. 1:16-cv-1381, 2017 WL 748738, at *6–7 (N.D. Ga. Feb. 27, 2017). In a different, but related, context, the Sixth Circuit has held that prison officials may be held liable for deliberate indifference to a suicidal inmate's risk from self-harm. *See Comstock v. McCrary*, 273 F.3d 693, 703–05 (6th Cir. 2001). If a prison official has a duty to protect a suicidal inmate from self-harm, perhaps the Eighth Amendment would compel a prison official to protect a prisoner from self-harm resulting from taking illegal drugs.

Even if a cause of action could be established under these circumstances, however, Plaintiffs cannot establish the subjective component as to each Defendant. "[I]t is not enough to generically allege an influx of drugs into the jail, Plaintiff's Complaint must also demonstrate that each individual . . . Defendant subjectively knew of the risk of [Zakora]'s ingesting the illegal drug from the influx." *James*, 2017 WL 748738, at *7. Plaintiffs' allegations on this issue are exceedingly thin, and the closest they come is their allegation of what a prisoner allegedly told Defendant Chrisman about Zakora receiving drugs. But even that allegation falls far short of showing that Defendant Chrisman was subjectively aware of facts indicating a risk that Zakora would ingest illegal drugs and that he actually drew the inference. (ECF No. 3 at PageID.34–35.) The allegations as to the remaining Defendants—based on what Defendant Chrisman knew and told them or simply their awareness that drugs were being smuggled into the facility—are too conclusory and bereft of factual content to satisfy the *Twombly*/*Iqbal* pleading requirements. They do not establish a plausible claim that Defendants were subjectively aware of the risk that Zakora would ingest drugs.

### b.    Count III

In Count III, Plaintiffs allege that Defendants Washington, Rivard, and Hoffner failed to train and supervise Jane Doe and other prison employees to prevent the entry of illegal drugs into LCF and other MDOC facilities. As the MDOC Defendants point out, Plaintiffs allege this claim as a Fourteenth Amendment claim, which Plaintiffs acknowledge is inapplicable in the prison setting.

In any event, assuming that Plaintiffs had intended to assert an Eighth Amendment supervisory liability claim, it would nonetheless fail for two reasons. First, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough; nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899. Supervisory liability attaches only if the plaintiff shows that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [defendant]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (internal quotation marks omitted). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As set forth above, Plaintiffs fail to plead any fact demonstrating that Defendants Washington, Rivard, and Hoffner were personally involved in the alleged constitutional deprivation. There is simply no factual allegation showing that they were aware that Zakora was at risk for ingesting illegal drugs. Even assuming that

Defendants were aware of the prior overdose incidents at LCF—occurring, at most, two days before Zakora overdosed—is not enough to impose liability on Defendants.

Second, Plaintiffs' allegations are couched in terms of policies, lack of policies, and failures to train, classic *Monell* liability allegations. As explained in *Parsons v. Caruso*, 491 F. App'x 597 (6th Cir. 2012), unconstitutional policy or practice claims may be brought against municipalities and other local governmental bodies but not against state officials. *Id.* at 609; *see also Phillips v. Ballard*, No. 5:17-CV-301, 2019 WL 2359571, at *19 (E.D. Ky. June 4, 2019) ("As a threshold matter, an assertion that supervisory government officials failed to adequately train or supervise their subordinates typically arises not as a freestanding claim but as one of several ways for a plaintiff to show that a policy or custom of a city or county caused the plaintiff's injury, so that municipal liability may attach." (citing, among others, *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 737 (6th Cir. 2015)).

While Plaintiffs apparently concede that Defendants Washington, Rivard, and Hoffner did not engage in any active unconstitutional behavior, they contend that these Defendants can still be held liable for inaction. It is true, as Plaintiffs argue, that in certain instances, supervisory personnel may be held liable for failing to act. *See Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006). As the court explained in *Allen v. Caruso*, No. 08-14252, 2009 WL 6409365 (E.D. Mich. Aug. 28, 2009), *report and recommendation adopted in part and rejected in part*, 2010 WL 1755395 (E.D. Mich. Apr. 30, 2010), however, a supervisor's inaction will give rise to liability only where the plaintiff challenges "ongoing conditions of confinement." *Id.* at *4 (quoting *Spencer*). Plaintiffs' claim here is not an ongoing conditions-of-confinement claim. Rather, it is a failure-to-protect claim, for which they must show that Defendants were subjectively aware of a risk that Zakora

would ingest the illegal drugs. As explained above, Plaintiffs fail to allege sufficient facts in that regard.

### c.    Count IV

Plaintiffs allege in Count IV that Defendants Mobley and Johnson were deliberately indifferent to Zakora's serious medical need when they failed to check on him after a prisoner, at some point during the "night/early morning" of January 22, 2017, informed them that he was "not doing well" or that "there appeared to be something wrong with him." (ECF No. 3 at PageID.33, 45.) Plaintiffs allege that had Defendants, who worked different shifts, checked on Zakora, he could have received lifesaving medical treatment. (*Id.* at PageID.45.)

Although the Sixth Circuit has "long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner," *Comstock*, 273 F.3d at 702, Plaintiffs fail to allege a plausible claim against Defendants Mobley or Johnson. Their allegations establish no more than a "sheer possibility," as opposed to a plausible assertion, that Defendants acted unlawfully. *Iqbal*, 556 U.S. at 678. The first amended complaint says only that Zakora died as a result of an overdose sometime on January 22, 2017, and that sometime during the night/early morning that day an unknown prisoner told either Mobley, Johnson, or both of them to check on Zakora because he was "not doing well" or because "there appeared to be something wrong with him." Without some indication of the approximate time Zakora died and the approximate time the alleged prisoner spoke to Mobley or Johnson—to show saving him was still a possibility—there is no *plausible* claim that either Defendant violated Zakora's Eighth Amendment rights. It is no more than a possibility.

### 2.    Rule 56 Motion

In support of their summary judgment motion, Defendants Mobley and Johnson submit declarations, the autopsy report, and the MDOC critical incident report. According to the autopsy

report, the time of death was unknown. (ECF No. 37-3 at PageID.289.) In his declaration, Mobley states that he worked the third shift, beginning on January 21, 2017 from 10:00 p.m., until 6:00 a.m. on January 22, 2017, in the C-5 housing unit. (ECF No. 37-8 at PageID.347–48.) He further states that he had no knowledge either before or during that shift that Zakora possessed, ingested, or intended to ingest illegal drugs. Mobley also states that he did not speak with Zakora during that shift, and no one advised him to check on Zakora or to watch him closely or that Zakora was having any medical issues. Mobley states that, although he did his hourly rounds through the C-5 unit, it was quiet, and he was unaware of any issue. (*Id.* at pageID.348–49.) In his declaration, Johnson states that he worked the first shift on January 22, 2017, beginning at 6:00 a.m. in the C-5 housing unit. (ECF No. 37-7 at PageID.343–44.) Johnson states that he no knowledge, either before or during that shift, that Zakora had previously used, possessed, or ingested illegal drugs. Johnson further states that he discovered Zakora deceased in his bunk that morning at 7:58 a.m., only seconds after a prisoner who was exiting the cube said that Zakora was not "doing too good" or words to that effect. (*Id.* at PageID.344.) Prior to that time, no one advised Johnson that he should check on Zakora or watch him closely. (*Id.*)

As Defendants note, the Sixth Circuit has held in overdose cases that officers are not liable for violating the Eighth Amendment when they lack knowledge that the decedent ingested drugs. *See*, *e.g.*, *Weaver v. Shadoan*, 340 F.3d 398 (6th Cir. 2003); *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001). Here, Defendants' evidence, which is unrebutted, shows that Mobley and Johnson were both unaware that Zakora had ingested drugs. Plaintiffs' attempt to distinguish *Weaver* and *Watkins* fails, as the point of those cases is that a defendant who lacks knowledge that a prisoner has ingested drugs cannot be considered deliberately indifferent. Plaintiffs' assertion

that, regardless, Defendants still should have checked on Zakora does not alter the outcome. There is no basis to conclude that they were deliberately indifferent.

Finally, as noted above, although Plaintiffs' counsel has submitted a declaration pursuant to Rule 56(d) requesting discovery, it lacks both details and specificity as to what discovery might yield. This is particularly important, as counsel fails to identify what evidence might be obtained that would reveal the time Zakora died. If this cannot be established, Plaintiff's claim would depend entirely upon speculation. Similarly, Plaintiffs fail to indicate what discovery they believe they can obtain that would contradict Mobley's and Johnson's declarations that they had no knowledge of Zakora's need for medical care prior to the time Johnson found him deceased in his bed. Plaintiffs have failed to meet their burden under Rule 56(d).

Accordingly, I recommend that Defendants Mobley and Johnson are entitled to summary judgment on Plaintiffs' claims against them.

### D.    Plaintiffs' Motion for Leave to Amend

After the present motions were fully briefed, Plaintiffs filed a motion for leave to amend to identify MDOC Defendant Jane Doe as former Corrections Officer Tammy Blair and to add two new MDOC Defendants, current Corrections Officer Thomas Ivany and former Corrections Officer Chase White, both of whom, Plaintiffs allege, engaged in smuggling drugs into LCF either jointly with Blair or separately. Plaintiffs assert that they learned of Blair's identity on April 30, 2021, and learned of the two additional proposed defendants at or after that time. (ECF No. 47 at PageID.468.)

Pursuant to Fed. R. Civ. P. 15(a)(2), "a court should freely give leave [to amend] when justice so requires." A court may deny leave "in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)

(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Ordinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). A motion to amend is considered futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The MDOC and MSP Defendants oppose the motion, arguing that it should be denied on grounds of undue delay, particularly because counsel had 39 months since Zakora's death to discover the identities of the smugglers, and he has provided no explanation for why he was unable to learn of those individuals until after the motions were fully briefed. They further argue that they will be prejudiced because of the time and effort expended in briefing the dispositive motions, and amendment would be futile for the reasons cited in their motions and supporting briefs.

First, as for the effect on the pending motions, Plaintiffs do not argue, and I do not find, that the proposed amendment in any way interferes with the pending motions by adding additional factual matter pertinent to the claims against the MSP and MDOC Defendants. In fact, Plaintiffs limit their request to adding three new parties. Indeed, based on my review of the proposed amendment, it adds nothing of substance to alter the recommendations set forth above. Thus, any amendment would be allowed only to the extent it asserts claims against the three proposed Defendants.

Although there is some question of delay—and Plaintiffs have not explained the reason for the substantial delay—there is no indication of bad faith or that Plaintiffs assert the amendment for an improper purpose. Moreover, because, as noted, any amendment, if permitted, would be limited solely to claims asserted against the three newly-identified parties, there is no prejudice to the MDOC or MSP Defendants. In fact, Plaintiffs will not be granted leave to file an amended

pleading including the claims against the MSP and MDOC Defendants who have appeared because such claims are futile for the reasons set forth in the above recommendations.

Because the applicable statute of limitations expired in January 2020, *see Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (Section 1983 claims brought in Michigan is the state's three-year statute of limitations for personal injury claims); *see also* ECF No. 47 at PageID.473–74, the real question is whether Plaintiffs' proposed amendment relates back to the date of their original complaint. Federal Rule of Civil Procedure 15(c) specifies that a pleading relates back when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Fed. R. Civ. P. 15(c).

The parties Plaintiffs seek to add are not all in the same boat. First, they seek to substitute Blair for Jane Doe, who is already a named Defendant in the case. Second, they seek to add two entirely new parties, Ivany and White, who were never mentioned in any prior pleading.

I begin with Ivany and White. Plaintiffs' analysis as to these two individuals proceeds as if Rule 15(c)(1)(C) applies. It does not. They are new parties because the amendment, as to them, does not "change[] the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C). The Sixth Circuit has affirmed time and again that claims against additional

parties do not relate back. As stated in *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313 (6th Cir. 2010): "[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *Id.* at 318 (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991) (quoting *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973)); *see also Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 615 (6th Cir. 2014) ("This court has held that claims against *additional* parties do not relate back." (italics in original)); *Puskas v. Delaware Cnty.*, No. 2:19-cv-2385, 2021 WL 1575285, at *3–4 (S.D. Ohio Apr. 22, 2021) ("Here, the Amended Complaint does not substitute Lt. Buttler for any original defendant, nor does the record indicate that Mrs. Puskas failed to name him in the original Complaint by dint of mistake as to his identity. Although Mrs. Puskas may have been unaware of Lt. Buttler's supervisory authority over the DSCO K-9 program, her failure to earlier discover that fact— whether by her own fault or the Defendants'—does not justify the assertion of claims against Lt. Buttler after the limitations period closed." (citing *DeBois v. Pickoff*, No. 3:09cv230, 2011 WL 1233665, at *10 (S.D. Ohio Mar. 28, 2011)). Accordingly, the proposed claims against Ivany and White do not relate back and are time-barred.

Plaintiffs' claim against Blair, which seeks to substitute her for Jane Doe, is governed by Rule 15(c)(1)(C). *See Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 433 (6th Cir. 2013) ("Replacing a 'John Doe' defendant with a new, previously unknown party is considered a change of parties and must comply with the requirements of Rule 15(c)(1)(C) when the change is made after the expiration of the applicable statute of limitations."). There is no question that the requirements of subsection (B) are satisfied because the amendment as to Blair asserts the same claim set out against Jane Doe. However, Plaintiffs must still satisfy conditions (i) and (ii) set forth

in subsection (C). *Id.* This they cannot do with regard to the second condition, which requires that they show "a mistake concerning the proper party's identity." Plaintiffs do not even address this issue in their brief. The Sixth Circuit has held that lack of information about the identity of a party does not constitute a mistake as to identity. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *see also Wiggins v. Kimberly-Clark Corp.*, 641 F. App'x 545, 549 (6th Cir. 2016) (stating that even if two proposed new defendants knew or should have known that the plaintiff would bring the "John Doe" claims against them, the plaintiff "failed to establish that his lack of knowledge of their identities was due to a 'mistake' as the Rule requires"); *Ham*, 575 F. App'x at 616 ("We have distinguished a plaintiff's *mistake* concerning the identity of a party from a plaintiff's mere *failure to find out* a party's identity." (italics in original)); *Brown*, 517 F. App'x at 433–34 ("We have previously held that an absence of knowledge is not a mistake, as required by Rule 15(c)(1)(C)(ii)).

Here, Plaintiffs admit that they did not learn of Blair's identity until April 30, 2021. Pursuant to the above cited cases, Plaintiff's lack of prior knowledge does not constitute a mistake for purposes of Rule 15(c)(1)(C)(ii). Plaintiffs rely on *Berndt v. State of Tennessee*, 796 F.2d 879 (6th Cir. 1986), for much of their argument, and *Berndt* could be read to relax with the mistake requirement in certain circumstances. *Id.* at 884. *Berndt* was decided a decade before *Cox*, and some courts have suggested a possible split between the two cases. As the court in *Reiner v. Canale*, 301 F. Supp. 3d 727 (E.D. Mich. 2018), thoroughly and persuasively explained, however, the bulk of recent Sixth Circuit authority, although unpublished, adheres to *Cox*'s distinction between a lack of knowledge and a mistake about an intended party's identity. *Id.* at 734–39. Summing up, the *Reiner* court said that "[a]lthough there is arguably conflicting Sixth Circuit case law on the issue of whether an initial lack of knowledge as to the identity of a defendant constitutes a 'mistake' under Rule 15(c)(1)(c)(ii), the weight of authority clearly favors a finding that it does

24

not." *Id.* at 739. I find this analysis compelling and therefore adopt it. *See Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008) ("Our circuit precedent is fatal to Moore's argument. In this court, a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "mistake concerning the party's identity" within the meaning of Rule 15(c)).

Accordingly, Plaintiffs' proposed amendment does not relate back under Rule 15(c).

## IV. Conclusion

For the foregoing reasons, I recommend that Defendants' motions to dismiss/for summary judgment (ECF Nos. 33, 36, and 39) be **granted**.

In addition, **IT IS ORDERED** that Plaintiffs' motion for leave to file second amended complaint (ECF No. 47) is **denied**.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: July 23, 2021                                  /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    U.S. Magistrate Judge