UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDY ZAKORA, as representative of
the ESTATE OF SETH MICHAEL
ZAKORA,

    Plaintiff,

v.

TROY CHRISMAN, et al.,

    Defendants.
_____/

Case No. 1:19-cv-1016

Hon. Hala Y. Jarbou

# ORDER

Plaintiff Brandy Zakora brought this action on behalf of the estate of Seth Michael Zakora against employees of the Michigan Department of Corrections ("MDOC") regarding the death of Seth Zakora ("Zakora") from a fentanyl overdose in January 2017 while he was incarcerated by the MDOC at the Lakeland Correctional Facility (LCF). Defendants filed a motion for summary judgment on Plaintiff's remaining claim, an Eighth Amendment claim against Defendants Chrisman, Huntley, Rurka, Hoffner, and Rivard. On February 11, 2025, Magistrate Judge Sally J. Berens filed a Report and Recommendation ("R&R") recommending that the Court grant the motion and dismiss the case. (R&R, ECF No. 149.) Before the Court are Plaintiff's objections to the R&R. (Objs., ECF No. 150.) For the reasons herein, the Court will overrule the objections and adopt the R&R.

Under Rule 72 of the Federal Rules of Civil Procedure,

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### A. Objection 1:  Objective Risk of Harm

The magistrate judge concluded that Plaintiff failed to provide evidence of the objectively serious risk of harm to Zakora that is necessary to support an Eighth Amendment claim.  In her complaint, Plaintiff alleged that "MDOC Defendants failed to protect Zakora from the dangers of illegal drugs by failing to 'do anything to curb the introduction, spread, and usage of dangerous drugs in prison, despite their direct knowledge from prisoners snitching to them and from two previous overdoses.'" *Zakora v. Chrisman*, 44 F.4th 452, 471 (6th Cir. 2022).  When evaluating whether Plaintiff's complaint could survive a motion to dismiss, the Court of Appeals held that the complaint alleged sufficient facts from which to infer "the widespread presence of drugs that resulted in two prior overdoses in Zakora's small C-Unit in the days immediately preceding his own death."  *Id.*  According to that court, "unfettered access to drugs in a prison, as evidenced here by the officials' failure to promptly investigate the two prior overdoses in Zakora's C-Unit, is sufficiently serious to satisfy the objective prong of an Eighth Amendment claim." *Id.* at 472.

In support of her assertion of "unfettered access," Plaintiff alleged that "illegal drugs were . . . being smuggled into [LCF] in basketballs that were thrown over the facility's fence," a scheme orchestrated by a prisoner and a female corrections officer.  *Id.* at 461.  A prisoner purportedly relayed information about this scheme to Troy Chrisman, an inspector at the facility, who then relayed it to Matthew Huntley, another inspector.  *Id.*  Warden Bonita Hoffner allegedly learned about the scheme as well, but Plaintiff alleged neither Hoffner nor Chrisman nor Huntley took action to investigate.

After proceeding to discovery, however, Plaintiff could not assemble evidence to support her allegations.  There was one incident in which LCF staff discovered two basketballs that had

2

been thrown over the exterior fence surrounding the facility. (R&R 4.) The basketballs contained contraband and some substances consistent with tobacco and marijuana. (*Id.*) The contents were inspected and turned over to the Michigan State Police ("MSP"). The MSP was unable to identify the perpetrator. When responding to Defendants' motion for summary judgment, Plaintiff provided no evidence that prisoners accessed any contraband from this smuggling attempt, which occurred in November 2016, about two months before Zakora's death. (*Id.*) In other words, there was one attempted smuggling incident involving basketballs, there was a follow-up investigation, and there was no evidence that any drugs from this attempt ended up inside the facility, let alone that Zakora had access to drugs through a pervasive smuggling scheme known to prison officials.[1]

As for the two overdoses that occurred in Zakora's unit in the two days before Zakora's death, officials promptly investigated those incidents as well. In response to the first incident, prison officials searched the prisoner's living area shortly after finding him unresponsive and uncovered no contraband. (*Id.* at 5; *see* Log Book, ECF No. 144-4, PageID.1065-66.) In response to the second incident, prison officials shut down Zakora's entire unit, searched prisoner rooms and living areas for contraband, and put all prisoners in the recreation room for close to an hour. (*Id.* at 6.) Apparently, they did not discover any contraband. A little over 24 hours later, they found Zakora lying unresponsive in his cell. (*Id.*) Contrary to Plaintiff's assertions in the complaint, officials did not turn a blind eye to evidence of the presence of drugs and drug smuggling at LCF until after Zakora's death. Instead, they investigated each incident they were aware of promptly after it occurred.

---

[1] Plaintiff initially alleged that a particular prisoner, Kyle Witek, was responsible for the flow of drugs into LCF that Zakora used. Indeed, prison officials found narcotics in Witek's possession when investigating Zakora's death. Plaintiff claimed that Inspectors Chrisman and Huntley had been aware of Witek's drug smuggling activity through kites that Witek sent them before Zakora's death. But the magistrate judge noted that Plaintiff was unable to provide more than speculation about the contents of those kites. (R&R 12-13.) The Court discerns no error in that conclusion and Plaintiff does not expressly object to it.

3

Plaintiff contends the Court of Appeals held that the two overdoses before Zakora's were sufficient to demonstrate the objective component of her claim, i.e., unfettered access to drugs at LCF. In support, Plaintiff relies on the following passage from the Court of Appeals' opinion:

> [T]he risk of injury from unfettered access to deadly drugs inside a prison "is not one that today's society chooses to tolerate." And that is precisely what the Estate alleges here. Drugs were allegedly so prevalent inside Zakora's C-Unit that two other inmates in his 12-to-16-person unit had overdosed in the two days prior to Zakora's death, yet the complaint asserts that no investigation was undertaken until after Zakora died. Only after Zakora's death did MDOC officials order a full investigation and have the MSP bring a drug dog into the C-Unit to check for drugs.

*Zakora*, 44 F.4th at 470 (citation omitted).

Plaintiff takes this passage out of context. Earlier in its opinion, the Court of Appeals detailed Plaintiff's assertion that "[a]t the time of Zakora's death, illegal drugs were allegedly being smuggled in basketballs that were thrown over the facility's fence." *Id.* at 461. In addition, multiple officials were allegedly aware of this smuggling operation and ignored it. *Id.* Also, prison officials allegedly did not investigate the two overdoses occurring before Zakora's. Accepting these facts as true, the two overdoses in Zakora's unit just before his overdose death could lead to a plausible inference that drugs were readily available to him, when coupled with allegations of drug smuggling and multiple overdoses that prison officials chose to ignore. But here, Plaintiff failed to uncover evidence of pervasive smuggling. Indeed, she provided no evidence of drug overdoses at LCF from drug smuggling in the three months prior to the weekend of Zakora's death. (*See* R&R 11.) She also failed to show a lack of response by prison officials to the attempted smuggling incident involving the basketballs or to the other two overdoses in Zakora's unit. In full context, Zakora's overdose death and the two overdoses immediately preceding it look more like the result of an isolated instance of drug smuggling impacting a few prisoners than a "rampant problem" at the facility that officials deliberately allowed to persist. *See Zakora*, 44 F.4th at 460.

Relying on the same passage quoted above, Plaintiff also argues that the Court of Appeals held that the use of a drug-sniffing dog was necessary for prison officials to meet their duty to protect Zakora from accessing drugs. This Court does not interpret that passage the same way. The Court of Appeals mentioned use of the drug dog *descriptively* to refer to what officials allegedly did after Zakora's death, not *prescriptively* to dictate what they should have done beforehand. Indeed, the standard for Plaintiff's claim is *deliberate indifference* by prison officials rather than mere negligence or a lack of due care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Prison officials must take "*reasonable* measures to guarantee the safety of . . . inmates" in their care; they need not take every measure possible. *See id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)) (emphasis added). Here, prison officials investigated the one documented incident of attempted drug smuggling. Plaintiff presented no evidence that this incident led to the entry of drugs into the facility. And Plaintiff presented no evidence that officials ignored other incidents of possible drug smuggling. To the contrary, before Zakora overdosed, prison officials searched his entire unit to look for hidden drugs. Although they did not find the drugs that Zakora later used, their actions were reasonable. Put another way, their actions show they were not deliberately indifferent to Zakora's risk of harm.

### B. Objection 2: Subjective Standard & Defendant Hoffner

Plaintiff next argues that the magistrate judge erred when reviewing evidence of whether Warden Hoffner was aware of the "unfettered access" to drugs in Zakora's unit before his death. (*See* Objs. 16.) Plaintiff contends that the magistrate judge did not construe the evidence in her favor. Regardless, any error on this point is harmless because the magistrate judge correctly concluded that Plaintiff's assertions about a widespread drug problem at LCF were unfounded.

(*See* R&R 10-12.)  Without evidence supporting the *objective* prong of Plaintiff's Eighth Amendment claim against Hoffner, she cannot succeed.

Even assuming Plaintiff is correct that the two overdoses in Zakora's unit sufficed to create a genuine dispute of fact about the existence of an objectively serious risk of harm to Zakora from the availability of drugs, the Court finds no error in the magistrate judge's recommended disposition because Plaintiff failed to demonstrate the *subjective* prong of her Eighth Amendment claim. That prong requires a showing that the official "knows of and disregards" the risk of harm to the prisoner. *Farmer*, 511 U.S. at 837.

The magistrate judge concluded Warden Hoffner was not aware of the two overdoses before Zakora's death because the protocol at the time was to notify the deputy warden or warden on duty, and Hoffner was not on duty when any of the overdoses occurred. (R&R 14.) Plaintiff responds that Deputy Warden Morrison notified Hoffner of Zakora's overdose death even though Hoffner was not on duty at the time. Plaintiff argues that "the circumstances were the same for each overdose," so if Morrison notified Hoffner of Zakora's overdose while Hoffner was not on duty, a jury could infer that Morrison or someone else immediately notified Hoffner of the previous overdoses when Hoffner was not on duty. (Objs. 19.) The flaw in this logic is that the circumstances were *not* the same. A death is far more serious than an overdose. There are many possible reasons why a prison official might want to interrupt Hoffner's time off to immediately notify her of a death but not do so after an overdose. Thus, it is not reasonable to infer Hoffner's awareness of the previous overdoses based on the fact that Morrison later notified her of Zakora's death.

But even if Hoffner was aware of the first two overdoses and failed to act before Zakora's overdose, Plaintiff's claim fails because other prison officials acted to protect Zakora. They

6

searched Zakora's entire unit for drugs. They were not deliberately indifferent to the risk Zakora would be harmed. There was nothing more that Hoffner needed to do to satisfy the Eighth Amendment. As the magistrate judge put it, "regardless of Defendants' subjective awareness, Plaintiff cannot establish deliberate indifference because it is undisputed that prison staff conducted searches in response to the overdoses." (*Id.*) Thus, any possible error by the magistrate in assessing evidence of Hoffner's knowledge is irrelevant. The outcome is the same. There is no viable Eighth Amendment claim because prison officials responded reasonably to the risk.

### C. Qualified Immunity

Finally, Plaintiff argues that the magistrate judge erred by granting qualified immunity to Defendants. Plaintiff's argument against qualified immunity rests upon her other arguments discussed above. She contends that there is sufficient evidence that prison officials were aware of and deliberately disregarded the "unfettered access" to drugs at Zakora's facility. (Objs. 21.) For reasons discussed, however, the Court discerns no error in the magistrate judge's conclusion that "this case presents, at most, the 'simple exposure to drugs'" that does not violate the Eighth Amendment. (R&R 18 (quoting *Zakora*, 44 F.4th at 472).)

In short, the Court is not persuaded that there is any error in the recommended disposition of Defendants' motion. Accordingly,

**IT IS ORDERED** that the Report and Recommendation (ECF No. 149) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 143) is **GRANTED**.

The Court will enter a judgment dismissing the case.

Dated: June 6, 2025                              /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE